No. 66,240

STATE OF KANSAS, *Appellee,* v. WILLIAM MASON, *Appellant.*

(827 P.2d 748)

Opinion filed February 28, 1992.

*M. Kristine Paredes,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, and *Kaye Messer,* assistant appellate defender, were with her on the brief for appellant.

*David L. Miller,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: William H. Mason appeals from his convictions of one count each of aggravated kidnapping (K.S.A. 21-3421), attempted aggravated sodomy (K.S.A. 1991 Supp. 21-3301; K.S.A. 21-3506), attempted rape (K.S.A. 1991 Supp. 21-3301; K.S.A. 21-3502), and aggravated sexual battery (K.S.A. 21-3518). Following enhancement of his sentence, the defendant is serving a controlling term of 26 years to 100 years plus two consecutive life sentences. We affirm on all counts.

Due to the issues raised on appeal, the facts will be set forth in some detail.

The victim, N.P., an 89-year-old widow, lived alone in rural Miami County. Around noon on June 7, 1990, a man came to her house, told her he had a flat tire, and asked to use her telephone. She asked if he was the same man who had been there the week before, and he replied, "Yes."

The man used the telephone and the bathroom, and then asked for a drink of water. When N.P. went to the kitchen sink to get the water, the man grabbed her, dragged her into the bedroom, and put her on the floor.

N.P. was wearing a dress and underwear, and the man forcibly removed her underwear and held her to the floor by her ribs and back. He tried to unzip her dress but she resisted and told him he was not going to take it off. The assailant held her down, straddled her on the floor, exposed his penis, and attempted to force N.P. to perform oral sodomy upon him. She continued to resist and refused to comply with his demands.

At one point while the man had N.P. on the floor, he reached for and got one of her dress stockings out of her shoes, which were nearby, and doubled it up in his hand. Before he had an opportunity to use the stocking, for whatever purpose, the man suddenly released his victim, got up, and ran through the kitchen and out of the house. The evidence showed that there was a clear view of the driveway and approach to the house through the window in N.P.'s bedroom.

Within moments after the man left, N.P.'s son, Damon, came into the house and discovered his mother crawling toward the telephone. Damon, who lived about two miles from his mother, made a habit of coming to her house around noon so he could

pick up her mail at the roadside mailbox and bring it in to N.P. The entrance to the house was on the opposite side from the approaching drive, and Damon did not see anyone leave the house as he came up the driveway. There was testimony at trial that while the road, mailbox, and driveway were all visible from the bedroom they would be difficult to see from the kitchen.

Damon immediately called the sheriff's office and reported the assault. N.P. described her assailant as medium built, with black hair and mustache, wearing a light-colored shirt trimmed with "some type of stripe," blue jeans, and "old ragged" shoes, not made of leather but of "felt or something else."

Sheriff Dan Morgan received a call at 1:06 p.m. from the dispatcher advising him of the sexual assault and he proceeded toward the home of N.P. While doing so, he stopped a man jogging barefoot along the gravel road about two miles from the victim's home. The man wore blue jeans, but no shirt, shoes, or socks. He matched the physical description given by N.P. The man was identified as Bill H. Mason and was transported to the victim's house where she was unable to positively identify him as her attacker.

Other deputies who arrived at the point where the sheriff had stopped Mason found a light-colored shirt with a blue stripe in the road and also found two shoes a short distance away. When those articles of clothing were shown to N.P., she immediately identified the shoes as the ones worn by her attacker. Later that afternoon the shirt and shoes were definitely identified by Mason's wife as belonging to him. Mason had been to see his parole officer early that same morning, and employees in the parole office identified the shirt, shoes, and jeans as being the ones worn by Mason that morning.

Mason's car was found in a field across the road from N.P.'s home. Mason was charged and convicted at trial as set forth earlier. At trial the defendant testified he became depressed after leaving the parole office, started drinking, got his car stuck on some rocks in a field, and did not remember anything about being at N.P.'s house. He admitted the shoes found near the scene were his but denied any knowledge of the shirt. Additional facts will be set forth as may be necessary in discussing the various issues raised on appeal.

Defendant's first argument is that there was not sufficient evidence of bodily harm to sustain the conviction of aggravated kidnapping.

K.S.A. 21-3421 provides:

"Aggravated kidnapping is kidnapping, as defined in section 21-3420, when *bodily harm* is inflicted upon the person kidnapped." (Emphasis added.)

K.S.A. 21-3420 provides:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
(a) For ransom, or as a shield or hostage; or
(b) To facilitate flight or the commission of any crime; or
(c) To inflict bodily injury or to terrorize the victim or another; or
(d) To interfere with the performance of any governmental or political function.
Kidnapping is a class B felony."

The statutes do not define "bodily harm" and the trial court gave the following instruction based upon PIK Crim. 2d 56.25:

"INSTRUCTION No. 12
"The defendant is charged with the crime of aggravated kidnapping. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
1. That the defendant took [N.P.] by force;
2. That it was done with intent to hold such person to facilitate the commission of a crime;
3. That bodily harm was inflicted upon [N.P.]; and
4. That this act occurred on or about the 7th day of June, 1990, in Miami County, Kansas.
"Bodily harm means any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner, or the projecting of such force against the victim by the kidnapper."

The defendant's arguments in support of his first issue are twofold. First, he asserts that the definition of bodily harm in Instruction No. 12 is an incorrect statement of the law and, second, he claims that the evidence adduced at trial was insufficient to prove bodily harm.

At the outset, it should be noted that defendant did not object to the instruction, or the accompanying definition of bodily harm, at the trial. A party may not assign as error the giving or failure to give an instruction unless the party objects to the instruction, stating the specific grounds for the objection. Absent such ob-

jection, an appellate court may reverse only if the instructions given are clearly erroneous. K.S.A. 22-3414(3); *State v. Owens,* 248 Kan. 273, Syl. ¶ 7, 807 P.2d 101 (1991).

Defendant argues that the trial court in Instruction No. 12 used an obsolete, overbroad definition of "bodily harm." He claims that although Kansas courts recognized the definition in the past, the definition of bodily harm has been significantly narrowed to exclude trivial injuries likely to result from any forcible kidnapping. He maintains that the definition of bodily harm used in this case derived from Kansas' adoption of the definition employed in *People v. Tanner,* 3 Cal. 2d 279, 44 P.2d 324 (1935), and that California has since expressly rejected that definition. It is argued that in California today, bodily harm means "*substantial* bodily injury or damage to the body of a person who is the victim of such kidnapping by the application of physical force above and in addition to the force which is necessarily involved in the commission of such kidnapping." (Emphasis added.) *People v. Schoenfield,* 111 Cal. App. 3d 671, 685 n.14, 168 Cal. Rptr. 762 (1980). Defendant then reasons that Kansas is now required to use a definition that requires substantial bodily harm. We know of no rule of law which requires a state that has relied upon a decision of a sister state to thereafter follow all subsequent decisions of the other state on that particular issue. The definition of bodily harm in Instruction No. 12 was taken verbatim from our decision in *State v. Royal,* 234 Kan. 218, Syl. ¶ 6, 670 P.2d 1337 (1983).

In *State v. Taylor,* 217 Kan. 706, 714, 538 P.2d 1375 (1975), we recognized certain changes in the California law as set forth in *Schoenfeld* and stated:

"[The California court] now recognizes that some 'trivial' injuries are likely to result from any forcible kidnapping by the very nature of the act. It concludes that insignificant bruises or impressions resulting from the act itself are not what the legislature had in mind when it made 'bodily harm' the factor which subjects one kidnapper to a more severe penalty than another. A significant policy reason for making the distinction is to deter a kidnapper from inflicting harm upon his victim, and to encourage the victim's release unharmed. It was, in that court's view, only unnecessary acts of violence upon the victim, and those occurring after the initial abduction which the legislature was attempting to deter. Therefore, only injuries resulting from such acts would constitute 'bodily harm.' [Citations omitted.]

"This refinement of the meaning of 'bodily harm' fits within the limits of our own prior cases."

While we have recognized that the injuries may not be trivial and such as are likely to result from any forcible kidnapping, neither must they be substantial as argued by the defendant. We also recognized in *Taylor* that the definition of bodily harm given in this case was still viable in Kansas. The instruction as given is not clearly erroneous and thus defendant's first argument in support of this issue lacks merit.

The second argument is that the evidence of injury is insufficient to establish bodily injury as contemplated by the statute and our cases. The evidence disclosed that N.P. was dragged to the bedroom, placed on the floor, and restrained by holding her to the floor by her back and ribs. She sustained bruises to the upper body and both arms. Dr. Robert Banks testified that he examined N.P. on June 7, 1991, at approximately 7:30 p.m., and that he found a number of bruises and scratches on her arms and forearms, a scratch on her ankle, and an abrasion on the lower mid-abdomen. Her ribs were tender. The doctor testified that the bruises on the arms and the scratches were consistent with injuries sustained by someone who had been grabbed by the arm and then had defended herself. We conclude that the evidence was clearly sufficient to prove that this 89-year-old woman suffered bodily injury as contemplated by the statutes and our prior cases.

The next issue raised by the defendant is that the charge of aggravated sexual battery was multiplicitous with the charges of aggravated kidnapping, attempted rape, and attempted aggravated sodomy.

"Multiplicity in criminal pleading is the charging of a single offense in several counts." "A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution." *State v. Garnes*, 229 Kan. 368, Syl. ¶¶ 4, 5, 624 P.2d 448 (1981). In *State v. Scott*, 250 Kan. 350, 827 P.2d 733 (1992), we stated: "Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other." *State v. Woods*, 250 Kan. 109, Syl. ¶ 6, 825 P.2d 514 (1992); *State v. Howard*, 243 Kan. 699, 703, 763 P.2d 607 (1988).

Aggravated sexual battery is defined in K.S.A. 21-3518(1)(a) which states:

"(1) Aggravated sexual battery is:

(a) The unlawful, intentional application of force to the person of another who is not the spouse of the offender and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another."

Defendant was charged with four counts. The aggravated kidnapping charge alleged that he intentionally took the victim by force with intent to hold her to facilitate the commission of the crime of rape and/or sodomy and did inflict bodily harm on the victim. The attempted rape charge alleged that defendant attempted to commit the act of sexual intercourse with the victim without her consent while her resistance was overcome by force or fear. The attempted aggravated criminal sodomy charge alleged that he attempted to commit sodomy with the victim, who did not consent, when she was overcome by force or fear. The aggravated sexual battery charge alleged that defendant applied force to the victim, who was not his spouse and did not consent, with the intent to arouse or satisfy his sexual desires.

Defendant relies upon K.S.A. 21-3107(2) and three Kansas cases which apply that statute. K.S.A. 21-3107(2) provides:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) a lesser degree of the same crime;

(b) an attempt to commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged;

(d) a crime necessarily proved if the crime charged were proved."

In *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976), this court set aside one count of aggravated assault when the court found that the act of violence relied upon for that charge was the same act of force used to establish the charges of kidnapping and rape. However, in doing so the court stated:

"In *State v. Lora*, 213 Kan. 184, 515 P.2d 1086, we stressed that duplicity [multiplicity] does not depend on whether the facts proved at trial are actually used to support the conviction of both offenses; rather, it turns on whether the necessary elements of proof of the one crime are included in the other." 218 Kan. at 761.

Again, in *State v. Turbeville*, 235 Kan. 993, 995, 686 P.2d 138 (1984), the court found that a count of aggravated battery was multiplicitous to the charge of attempted murder when both charges were based upon one single act, the shooting of the victim. The court disposed of the issue in a single paragraph and did not deem it necessary to go into detail due to the obvious fact that the defendant was both charged and convicted of the two offenses based upon one single act of violence.

Finally, the defendant cites *State v. Cathey*, 241 Kan. 715, 741 P.2d 738 (1987), where the facts revealed that the defendant was charged with attempted murder and aggravated battery based upon a beating and a shooting of the victim. The court found that the two acts were essentially simultaneous and part of one attack and, therefore, were multiplicitous.

All three cases relied upon by defendant are distinguishable from the present case. Here, the elements of the charge of aggravated sexual battery as specified in K.S.A. 21-3518(1)(a) require proof of facts not required in proving the other charges. Defendant relies upon K.S.A. 21-3107(2)(d), which defines an included crime as "a crime necessarily proved if the crime charged were proved."

This court has frequently struggled with the proper construction, interpretation, and application of K.S.A. 21-3107(2)(d) as demonstrated in several recent cases, including *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988); *State v. Adams*, 242 Kan. 20, 744 P.2d 833 (1987); and *State v. Arnold*, 223 Kan. 715, 576 P.2d 651 (1978).

In the recent case of *State v. Gibson*, 246 Kan. 298, 787 P.2d 1176 (1990), the issue of the application of the statute was again before this court. The defendant contended that aggravated sexual battery was a lesser included offense of rape under the facts of the case. In *Gibson* we stated:

"Defendant recognizes that the statutory elements are different in that aggravated sexual battery requires proof of a nonspousal relationship and proof of an intentional application of force with the intent to arouse or satisfy the sexual desires of the offender or another, neither of which are required to prove rape. However, defendant contends that under our decision in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), the instruction was required because the State did prove an intentional application of force with the

intent to arouse upon proving the act of sexual intercourse and also proved a nonspousal relationship.

"In *Fike*, the court stated the test for lesser included crimes under K.S.A. 21-3107(2)(d) as follows:

'In determining whether a lesser crime is a lesser included crime or offense under K.S.A. 1987 Supp. 21-3107(2)(d), a two-step analysis or two-pronged test has been adopted. The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. If so, the lesser crime is a lesser included crime of the crime charged. Under the second prong of the test, even if the statutory elements of the lesser crime are not all included in the statutory elements of the crime charged, the lesser crime may still be a lesser included crime under K.S.A. 1987 Supp. 21-3107(2)(d) *if the factual allegations of the charging document and the evidence required to be adduced at trial in order to prove the crime charged would also necessarily prove the lesser crime.*' 243 Kan. 365, Syl. ¶ 1. (Emphasis added.)

"Defendant's reliance on *Fike* is misplaced. He has confused what the State may have actually proved in its evidence establishing that a rape occurred with what the State was required to prove to establish the crime charged. The mere fact that the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime a lesser included offense under K.S.A. 21-3107(2)(d). Neither the factual allegations of the rape charge nor the evidence the State was required to adduce at trial includes an intent to arouse or a nonspousal relationship. Defendant fails to distinguish between what the State may prove and what the State must prove at trial." 246 Kan. at 299-300.

On the other hand, the State relies upon K.S.A. 21-3107(1), which provides:

"When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information, or indictment."

Here, the State charged and proved the elements of aggravated sexual battery which include that the victim "is not the spouse of the offender" and that the act was done "to arouse or satisfy the sexual desires of the offender or another." Neither of these elements of proof are necessary to prove the crimes of aggravated kidnapping, attempted aggravated sodomy, or attempted rape. We conclude the charge of aggravated sexual battery is not a lesser included crime of aggravated kidnapping, attempted aggravated sodomy, or attempted rape, and is not multiplicitous to those charges under K.S.A. 21-3107(2). This issue lacks merit.

The next issue asserted by the defendant is that the evidence was insufficient for the jury to conclude beyond a reasonable doubt that the defendant was guilty of any of the crimes charged. The essence of defendant's argument is that "there is no distinct evidence linking Mr. Mason to the crimes charged," and that the circumstantial evidence presented falls short of proving guilt beyond a reasonable doubt.

When the sufficiency of the evidence is challenged, the standard of review is whether, after reviewing all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990). We have carefully reviewed the entire record and have set forth the facts in some detail earlier in this opinion. We conclude the evidence was clearly sufficient and that the argument of the defendant is wholly without merit.

The last issue asserted by the defendant on appeal is that the trial court erred in admitting evidence of a prior crime.

Prior to trial, the State moved to admit evidence pursuant to K.S.A. 60-455 that defendant had committed a similar crime, contending the other crime was relevant to the issue of identity.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion *but subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.*" (Emphasis added.)

Following a hearing on the State's motion, the court found that evidence of the defendant's prior conviction of second-degree murder in Leavenworth County committed in 1974 was admissible for the limited purpose of proving identity. The jury was given a limiting instruction to the effect that the evidence of the prior crime was admissible solely for the purpose of proving identity. Defendant claims error on grounds the evidence of the prior crime was not relevant, that the evidence linking him to the

present crime was circumstantial and "very weak at best," and that the risk of undue prejudice outweighed any probative value the evidence might have.

At trial, evidence of the 1974 murder was introduced through Lieutenant Charles Scharer, the detective who investigated the crime, and Dr. Earl J. Wright, the pathologist who performed the autopsy upon the victim in that case.

The State, in its brief, summarizes the evidence of the earlier crime as follows:

"Lieutenant Scharer was a detective with the City of Leavenworth Police Department and investigated the January 25, 1974, murder of the victim of which the appellant was convicted. Lieutenant Scharer identified the defendant in the courtroom as the person who was charged in that murder in Leavenworth County, Kansas.

"Lieutenant Scharer testified that the victim in that case was a 74-year-old female, that she was found with a wool sock wrapped tightly around her neck such that it caused a bulge on each side around her neck.

"Lieutenant Scharer interviewed the defendant in the course of his investigation of the murder. During the interview the defendant told Lieutenant Scharer that he lived across the street from the victim in Leavenworth, Kansas, and that he rented his home from the victim. The appellant told Lieutenant Scharer that he was married at the time. The defendant told Lieutenant Scharer that the victim let him into her home, they talked for a while, and they walked back to the telephone together which was located in the bedroom. Lieutenant Sharer was then told that the victim turned her back, the defendant pulled a sock out of his back pocket, and put it around her neck.

"The defendant told Lieutenant Scharer that the victim moved real fast, they tripped and fell on the bed, and he didn't remember what happened next. He got up, saw her lying there. He picked up her wallet off the dresser and walked out the back door.

"On cross-examination by defendant's attorney, Lieutenant Scharer testified that the defendant told him that on the night of the murder he had been drinking Seagram's and Coke and had had 10 or 12 drinks.

"On redirect examination, Lieutenant Scharer testified that the defendant said he did not know that the victim was dead when he left and that he had had no sexual contact with her.

"Lieutenant Scharer testified that the defendant was convicted of the murder of this victim and certified copies of the Journal Entry of conviction were admitted into evidence.

"Dr. Earl J. Wright, the pathologist who performed the autopsy upon the body of the victim, testified that the victim was elderly, 76 years of age, that she had a stocking around her neck and had been strangled, which was the cause of death. The doctor's examination of the vaginal area indicated

abrasions, contusions and bloody fluid at the entrance to the vagina. There was also trauma to the cervix. The doctor further testified that his examination of the fluids from the vagina revealed the presence of acid phosphatase which is alien to the female but is present in the prostatic secretions from the male. His findings were consistent with rape."

In ruling on the admissibility of prior crimes evidence pursuant to K.S.A. 60-455, the trial court must: (1) determine it is relevant to prove one of the eight factors specified in the statute; (2) determine the fact is a disputed, material fact; and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury. *State v. Nunn*, 244 Kan. 207, 211, 768 P.2d 268 (1989); *State v. Breazeale*, 238 Kan. 714, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986).

The identity of the defendant in the instant case was the central issue and was a hotly disputed and material fact. The relevance of the evidence surrounding the 1974 murder to the statutory issue of identity is obvious.

*State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974), is the leading case on the admissibility of prior crimes evidence under K.S.A. 60-455. The court set forth several basic principles to be considered in the admission of such evidence and stated:

"11. Where a similar offense is offered for the purpose of proving *identity*, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. In other words to show that the same person committed two offenses it is not sufficient simply to show that the offenses were violations of the same or a similar statute. There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses." 215 Kan. at 177.

We do not deem it necessary to review at length the evidence already set forth disclosing the similarities between the facts surrounding the 1974 case and the present one. Suffice it to say, the two cases are sufficiently similar to establish the relevancy and materiality of the prior crimes evidence to prove the identity of the defendant in this case.

Finally, the defendant contends the prejudicial effect of the evidence far outweighs its probative value. In *State v. Searles*, 246 Kan. 567, 579, 793 P.2d 724 (1990), we stated: ·

"Before prior crimes evidence is admissible under K.S.A. 60-455, the trial court must also find that the probative value of the evidence—for the limited purpose for which it is offered—outweighs its prejudicial effect. . . . [T]he evidence should not be admitted if the potential for natural bias and prejudice overbalances the contribution to the rational development of the case."

In the present case, the State correctly maintains that the prior crimes evidence was not cumulative, but was a significant piece of evidence to aid in proving identity. While we cannot say that the evidence was not prejudicial to the defendant's case, we are satisfied that its probative value far outweighs any such prejudice. A ruling on the admissibility of prior crimes evidence lies within the sound discretion of the trial court and "will not be interfered with on review unless that discretion was abused, or unless the trial judge admitted evidence that clearly had no bearing on any of the issues." 246 Kan. at 579. In the present case, that discretion was not abused.

The judgment is affirmed.

ABBOTT, J., concurring and dissenting: I concur in the majority opinion except for the majority's affirmance of the conviction for aggravated sexual battery.

Over the years, this court has not been consistent with language and tests applied in criminal cases concerning lesser included crimes, lesser degrees of the same crime, multiplicity, duplicity, merger, and a crime necessarily proved if the crime charged were proved. We frequently have "mixed and matched" the various theories in order to reach a desired result. Consequently, confusion continues to reign. Few, if any, in the criminal justice system apply either K.S.A. 21-3107(2) or case law concerning charges and instructions involving multiple charges arising from a single event with any degree of comfort or assurance.

This court, in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), attempted to simplify what had become complex, but, by taking *Fike* literally, subsequently has lost sight of the reason for the rules of law in this area. The underlying rationale is that a single act of force cannot provide the basis for multiple convictions.

The statutory elements of sexual battery or aggravated sexual battery include a nonspousal relationship and the intent to arouse or satisfy the sexual desires of the offender or another. These

two elements are not required to prove attempted rape, rape, attempted sodomy, or sodomy.

Based on the majority opinion, a jury can and, in most cases, will return a verdict of guilty of attempted sexual battery or sexual battery as well as attempted rape or rape in every attempted rape or rape case (or attempted sodomy or sodomy in every attempted sodomy or sodomy case) in which the victim is not the spouse of the accused. The victim is not married to the accused in the vast majority of attempted rape, rape, attempted sodomy, and sodomy prosecutions. Consequently, the defendant can be convicted of two crimes based on a single act of force.

Whether the unlawful infliction of force was done with the intent to arouse or satisfy the sexual desires of the offender or another is rarely susceptible of direct proof. That element nearly always is proven by circumstantial evidence. I would submit that a rational jury would find that element present in every rape or sodomy case. In most cases, the element also is present in attempted rape or attempted sodomy cases in which an unlawful touching occurred. (In those "attempt" cases in which an unlawful touching is not present, the prosecution would be unable to prove the statutory elements of sexual battery.) Again, a jury could convict the defendant of two crimes based on a single act of force.

The essential elements of sexual battery are present in this case in both the attempted rape and the attempted sodomy charges. The defendant committed two acts of force, one resulting in a conviction for attempted sodomy and the other in a conviction for attempted rape. One of those two acts of force also resulted in the aggravated sexual battery conviction.

Obviously, I am aware of the many cases concerning duplicitous and multiplicitous charges. A distinction must be made based on the essential elements of a crime. To blindly accept statutory elements without analyzing their purpose could lead to allowing multiple convictions for a single wrongful act because the legislature made a distinction of no significance. In deciding public policy, the legislature can properly exclude certain classes from being subject to the crime, which is what happened here when the legislature exempted spouses from prosecution in sexual battery cases. Excluding a class from prosecution is not an essential element of the crime and, therefore, the class component does

not make sexual battery a separate crime, distinct from the greater crime of rape or sodomy. The addition of the sexual arousal language also does not add an essential element because sexual arousal is inherent in the greater crime of rape or sodomy.

I would hold that sexual battery is a crime that necessarily is proved if a rape or sodomy is proved (K.S.A. 21-3107[2][d]) and the same act of force was used to convict the defendant of attempted rape, rape, attempted sodomy, or sodomy. Therefore, I would reverse the aggravated sexual battery conviction.

LOCKETT and ALLEGRUCCI, JJ., join the above and foregoing dissenting and concurring opinion.