No. 68,295

STATE OF KANSAS, *Appellee,* v. CHARLES E. JOHNSON, *Appellant.*

(874 P.2d 623)

Opinion filed May 27, 1994.

Roger L. Falk, of Law Office of Falk & Webb, of Wichita, argued the cause and was on the brief for appellant.

Debra S. Byrd, assistant district attorney, argued the cause, and Nola Foulston, district attorney, and Robert T. Stephan, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Charles E. Johnson appeals his jury trial convictions of aggravated burglary (K.S.A. 21-3716); unlawful possession of a firearm (K.S.A. 1990 Supp. 21-4204); and two counts of first-degree murder (K.S.A. 1990 Supp. 21-3401).

On July 9, 1990, several individuals were in a crack house situated at 441 North Indiana in Wichita. Two men forced their way into the building, shot and killed James Brehon and Chris Taylor, and left. Defendant's convictions all arise from this incident.

The first two issues arise from motions in limine filed by defendant. In the first motion, defendant sought to exclude any reference to his alleged connection with a gang or gang-related activities. In the second motion, defendant sought to exclude any evidence of other crimes committed by him. Both motions were heard. The trial court reserved its ruling on the first motion pending developments at trial. The second motion was denied. No objection was made at trial to any gang-related evidence or evidence of other crimes.

If a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. State v. Synoracki, 253 Kan. 59, Syl. ¶ 8, 853 P.2d 24 (1993); State v. Clements, 252 Kan. 86, Syl. ¶ 1, 843 P.2d 679 (1992); and State v. Bailey, 251 Kan. 156, Syl. ¶ 6, 834 P.2d 342 (1992). The same rule applies when a trial court reserves its ruling on a motion in limine until trial. The failure to request a ruling on the motion

at trial or otherwise object to the evidence at trial results in the issue not being preserved on appeal.

Defendant asks us to abandon our prior decisions requiring a contemporaneous objection to preserve the issue on appeal and adopt the clearly erroneous exception set forth in . K.S.A. 22-3414(3) relative to appellate review of jury instructions. This we decline to do. The contemporaneous objection rule is required by K.S.A. 60-404. We therefore conclude that neither of the first two issues has been preserved on appeal.

For his third issue, defendant contends the trial court abused its discretion in refusing to admit the taped statement of Emma Jacobs. In support thereof, he argues: (1) The trial court's determination that Ms. Jacobs was not unavailable as a witness and was unreliable is not supported by the evidence, and (2) the State opened the door to the admission of the tape by asking a police officer a question about what Ms. Jacobs had told him. We find no merit in either argument.

K.S.A. 1990 Supp. 60-460 provides, in pertinent part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made . . . (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

K.S.A. 60-459 provides in pertinent part:

"(g) 'Unavailable as a witness' includes situations where the witness is . . . (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

We shall first consider the "unavailable as a witness" aspect of the issue. On Friday, October 18, 1991, (three days before the trial commenced) Bradford Bentley, a special process server, was given a subpoena to serve on Ms. Jacobs. On that Saturday and Sunday, Bentley attempted to locate Ms. Jacobs. He tried to lo-

cate her at her current and prior residences, one of which he erroneously determined did not exist. He also contacted two neighbors and checked the cross-reference directory. Bentley admitted he did not contact the County Treasurer's Office to determine if Ms. Jacobs had a vehicle registered in her name, or contact the Clerk of the District Court to see if she was the subject of any lawsuits, or contact the Sedgwick Court Adult Detention Facility to determine her presence there, or contact other eyewitnesses to the murder to ascertain if any of them knew Ms. Jacobs' present whereabouts.

Ms. Jacobs was identified as a prostitute who had been in the crack house when two possibly gang-related homicides had occurred. When interviewed by the officer, she had initially denied being present at the murder scene and was reluctant to be involved in the investigation. These facts should alert anyone that Ms. Jacobs might be difficult to locate on the eve of trial. The trial court's finding that Ms. Jacobs was not unavailable as a witness rests on the lack of diligence in attempting to locate her.

In *State v. Ransom*, 239 Kan. 594, 598, 722 P.2d 540 (1986), we stated:

"The finding of unavailability of a witness is entirely within the court's discretion. *State v. Waite, Heard and Heard*, 223 Kan. 337, 341, 574 P.2d 1368 (1978); see *State v. Alderdice*, 221 Kan. 684, 687, 561 P.2d 845 (1977). In *Reich v. Reich*, 235 Kan. 339, 343, 680 P.2d 545 (1984), quoting *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973), the court said:

' "Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying the discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." ' "

In *State v. Hobson*, 234 Kan. 133, 158, 671 P.2d 1365 (1983), we held that a trial court is given considerable discretion in admitting statements under 60-460(d)(3). We find no abuse of discretion in the trial court's determination that defendant had not established that Ms. Jacobs was unavailable as a witness. We

therefore do not need to consider the trial court's determination relative to her reliability.

We should perhaps note that the defense wanted the taped interview in evidence as Ms. Jacobs had identified an individual known as Kelvin Ramsay as one of the shooters in the crack house. Another witness at trial did identify Kelvin Ramsay as one of the shooters.

We turn now to the question of whether the State opened the door to the admission of the tape. In the State's case in chief a police officer testified that he had learned the true identity of eyewitness Cherie Burch through Ms. Jacobs. That was the witness' only reference to Ms. Jacobs and had nothing to do with the material defendant sought to introduce. Further, this "opening the door" argument was not made to the trial court. This is a separate ground asserted for the admission of the tape. Trial court error in the exclusion of evidence cannot be predicated on a ground not presented to the trial court for its consideration.

For his fourth issue, defendant contends the jury instruction on the State's burden of proof was clearly erroneous.

The instruction in question stated:

"The law places the burden upon the State to prove the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced after considering all the evidence in the case that he is guilty.

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of them, you should find the defendant guilty.

"A reasonable doubt, if there is one, must arise after a careful consideration of all the evidence and it must arise out of the evidence, or lack of evidence, admitted in the trial of the case."

Defendant did not object to the instruction.

A trial court has discretion in giving instructions to the jury. On appeal, the instructions should be approved if, after being considered in their entirety, they properly and fairly state the law as applied to the facts. *State v. Hamons*, 248 Kan. 51, Syl. ¶ 5,

805 P.2d 6 (1991). A party may not assign as error the giving or failure to give an instruction unless the party objects to the instruction, stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the instructions given are clearly erroneous. *State v. Mason,* 250 Kan. 393, Syl. ¶ 1, 827 P.2d 748 (1992). An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict. *State v. Johnson,* 253 Kan. 75, Syl. ¶ 9, 853 P.2d 34 (1993). When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Whitaker,* 255 Kan. 118, Syl. ¶ 3, 872 P.2d 278 (1994).

On appeal defendant complains of the use of the words "innocence" and "innocent" in the instruction and the use of "should" rather than "must" in finding defendant not guilty if the jury had reasonable doubt about the truth of the State's claims; he also objects to the entire third paragraph concerning "reasonable doubt."

We shall first consider the issue as it relates to the usage of the terms "innocence" and "innocent."

A similar issue was raised in *State v. Keeler,* 238 Kan. 356, 361-62, 710 P.2d 1279 (1985), wherein we stated:

"It is the appellant's position that, by using the words 'innocent' and 'innocence,' the jury may be misled as to the proper burden of proof. . . . It is true that the defendant does not have to prove his innocence and that the burden is upon the State to prove a defendant *guilty beyond a reasonable doubt.* Failure to do so requires a jury to find the defendant not guilty under the evidence; it does not require the jury to find the defendant is innocent. In the instant case the confusion between the terms *not guilty* and *innocent* is compounded by the court's final instruction on the duty of the jury, which included:

'You are instructed that your only consideration in this case is the guilt or innocence of the defendant.' "

Following a lengthy excerpt from one authority on the use of the word "innocent" in a criminal trial, we continued:

"The Advisory Committee on Criminal Jury Instructions recognized the problem in part and now PIK Crim. 2d 52.02 refers to a determination of 'whether the defendant is guilty or not guilty' rather than the earlier version which directs the jury to 'determine the innocence or guilt of the defendant.' A very similar issue was raised in *State v. Maxwell,* 10 Kan. App. 2d 62, 691 P.2d 1316, *rev. denied* 236 Kan. 876 (1984), where the defendant complained of the use of the word 'innocence' instead of 'not guilty' in the instruction. The court affirmed the trial court's instruction, stating 'although the present wording of PIK Crim. 2d 52.02 (1983 Supp.) may be preferred, it still remains that the Kansas Supreme Court has previously approved PIK Crim. 52.02. Accordingly, use of this instruction was not erroneous.' 10 Kan. App. 2d at 69.

"The questionable use of the term innocent in referring to the State's burden of proof has not been confined to state trial and appellate courts. In the oft-cited case of *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964), the Supreme Court referred to the 'guilt or innocence' of the defendant on numerous occasions. 378 U.S. at 374, 379, 387, 394. As additional examples, see *Taylor v. Kentucky,* 436 U.S. 478, 485, 56 L. Ed. 2d 468, 98 S. Ct. 1930 (1978); *Williams v. Florida,* 399 U.S. 78, 82, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970).

"We conclude that while the proper use of the term 'not guilty' rather than the term 'innocent' is certainly preferable in a trial court's instruction to the jury, the use of PIK Crim. 2d 52.02 and the earlier version when read in conjunction with other appropriate instructions does not constitute reversible error. Here, when the instructions are read together and as a whole the substance of the State's burden of proof and the duty of the jury was adequately covered. See *State v. Abu-Isba,* 235 Kan. 851, 685 P.2d 856 (1984)." 238 Kan. at 363-64.

The usage of "should" instead of "must" in criminal jury instructions on burden of proof has been before us in two recent cases. In *State v. Whitaker,* 255 Kan. 113, Syl. ¶ 5, we held:

"Although K.S.A. 21-3109 states that where there is a reasonable doubt as to defendant's guilt, defendant 'must' be acquitted, it is not reversible error for the trial judge to instruct a jury: 'If you have no reasonable doubt as to the truth of any of the claims made by the State, you *should* find the defendant not guilty.' The better practice, however, as recognized in the recent amendment to the pattern jury instructions, is to instruct the jury that if there is reasonable doubt, it '*must* find the defendant not guilty.' PIK Crim. 3d 52.02."

*Whitaker* was followed and held to be controlling in *State v. Crawford,* 255 Kan. 47, 872 P.2d 293 (1994). *Whitaker* is controlling on the same point raised herein.

Defendant's final point on the burden of proof instruction is that the final paragraph relative to reasonable doubt is clearly

erroneous. The complained-of paragraph does not attempt to define reasonable doubt and, accordingly, does not involve *Sullivan v. Louisiana*, 508 U.S. \_\_\_, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993). Defendant has cited a number of our cases wherein we have held that "reasonable doubt" does not need definition because the words themselves describe the meaning. See, for example, *State v. Dunn*, 249 Kan. 488, Syl. ¶ 4, 820 P.2d 412 (1991). We conclude the complained-of paragraph does not rise to the level of being "clearly erroneous."

In *State v. Whitaker*, 255 Kan. 113, Syl. ¶ 1, we held:

"The pattern jury instructions for Kansas (PIK) have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed."

This issue clearly shows the validity of that determination. PIK Crim. 3d 52.02 provides:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove (he)(she) is not guilty. You must presume that (he)(she) is not guilty until you are convinced from the evidence that (he)(she) is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty."

Had PIK Crim. 2d 52.02 in the form in effect at the time of the trial herein been given, two of the three points relative to the burden of proof instruction would not have arisen. The third point (should v. must) has been taken care of in the new PIK Crim. 3d version.

We have carefully considered the three points raised relative to the burden of proof instruction given herein and conclude that neither individually nor collectively do they constitute reversible error. As in *State v. Keeler*, 238 Kan 356, when the instructions are read together and as a whole, the substance of the State's burden of proof and the duty of the jury were adequately covered.

For his fifth issue, defendant challenges the sufficiency of the evidence supporting his convictions. The primary issue at trial was identity.

We have often stated the appellate standard of review concerning the sufficiency of evidence. When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Van Winkle*, 254 Kan. 214, Syl. ¶ 5, 864 P.2d 729 (1993); *State v. Bradford*, 254 Kan. 133, Syl. ¶ 3, 864 P.2d 680 (1993); *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 4, 864 P.2d 693 (1993).

Two eyewitnesses identified defendant at trial as being one of the two men who had entered the crack house and committed the homicides. A shell casing found at the scene of the homicides was identified as having been fired from a gun in defendant's possession both a few days before and after the homicides. It was also established that this gun killed victim Brehon, which was consistent with the testimony of the eyewitnesses. The killers left the scene in an automobile similar to that known to have been used by defendant. Further, defendant told an acquaintance he was involved in the Wichita crack house shooting. There was also additional evidence from which defendant's guilt could be implied. We have no hesitancy in concluding there was sufficient evidence supporting the convictions.

For his final issue, defendant contends that the trial court abused its discretion in sentencing defendant.

At sentencing, the court reviewed the presentence investigation report, defendant's prior criminal record, and the statutory guidance and factors of K.S.A. 21-4601 and K.S.A. 21-4606 and sentenced defendant as follows: (1) 5 to 20 years for the aggravated burglary conviction; (2) life imprisonment on each of the two murder convictions; and (3) 3 to 10 years on the unlawful possession of a firearm conviction. The court ordered that the sentences run consecutive to each other and consecutive to any other sentence defendant is serving.

It is the sentencing judge alone who determines the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering the sentencing factors set forth in K.S.A. 21-4606(2), all of the reports, defendant's background, the facts of the case, and the public safety. A sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive. *State v. Turner*, 252 Kan. 666, Syl. ¶ 1, 847 P.2d 1286 (1993). Whether separate sentences imposed on the same day should be concurrent or consecutive is discretionary with the trial court. K.S.A. 1990 Supp. 21-4608(1); *State v. Pioletti*, 246 Kan. 49, 68, 785 P.2d 963 (1990).

Defendant makes a unique argument relative to his sentencing. The State had sought the imposition of the "hard 40," but the jury deadlocked on this question. The applicable statute is K.S.A. 1990 Supp. 21-4624(5), which provides:

"If, by unanimous vote, the jury finds beyond a reasonable doubt that one or more of the aggravating circumstances enumerated in K.S.A. 21-4625 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4628 and amendments thereto; *otherwise, the defendant shall be sentenced as provided by law*. The jury, if its verdict is a unanimous recommendation of a sentence of a mandatory term of imprisonment of 40 years, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstances which it found beyond a reasonable doubt. *If, after a reasonable time for deliberation, the jury is unable to reach a verdict, the judge shall dismiss the jury and impose a sentence of imprisonment for life with eligibility for parole* and shall commit the defendant to the custody of the secretary of corrections. In nonjury cases, the court shall follow the requirements of this subsection in determining the sentence to be imposed." (Emphasis supplied.)

The controlling term herein is 38 years. By running the sentences consecutive to sentences being served on other convictions, defendant will serve at least 40 years before release. Defendant argues that to permit the imposition of such a sentence after the jury could not agree on the hard 40 is tantamount to allowing

the trial judge to impose the hard 40 after the jury could not agree on its imposition.

There is nothing in K.S.A. 1990 Supp. 21-4624 which precludes a court from imposing maximum consecutive sentences after a jury has hung on or rejected a hard-40 sentence. We find this argument to be without merit.

We will now consider whether the sentence was excessive. Defendant had prior felony convictions, but let us just focus on defendant's criminal activities in July and August of 1990.

On July 7, 1990, defendant obtained the nine millimeter gun in the Tulsa, Oklahoma, armed robbery of Wendell Rivers. Defendant pled guilty to this crime.

On July 9, 1990, the crimes involved herein occurred. The two men forced their way into the crack house. The first victim (Taylor) was shot six times as he lay on the floor. Brehon was shot twice. There was no argument or altercation. No robbery or other crime was attempted. The men entered the residence with the intent to do personal injury.

On July 17, 1990, Rick Haney was shot and killed by the same nine millimeter weapon in a crack house in Tulsa. Defendant was present at the scene, admitted giving the gun to the killer, and pled guilty to being an accessory after the fact.

On August 4, 1990, Trooper Edward Vohs of the Kansas Highway Patrol attempted to stop on the Kansas Turnpike a GMC truck which had been reported stolen. Defendant was in the truck and jumped out and shot the officer in the chest with the nine millimeter gun. Defendant pled guilty to aggravated battery of a law enforcement officer.

The trial court reviewed the facts, applied the sentencing guidelines set forth in K.S.A. 21-4606, and concluded that defendant was an intelligent young man who could have had a positive future but who chose the criminal life. He found defendant was a man bent on serving himself at the expense of society. The classification report on defendant from the Topeka Correctional Facility is one of the most negative reports ever to have been before us. Defendant is a violent and dangerous man with no regard for

human life. We find no abuse of discretion in the sentences imposed herein.

The judgment is affirmed.