NOT DESIGNATED FOR PUBLICATION

No. 114,957

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RUFUS JERMAINE MCDONALD III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed June 23, 2017. Affirmed.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and HEBERT, S.J.

*Per Curiam*: The waiver of the right to a jury trial is unique to the defendant. An accused may waive that right in open court if the judge has informed the defendant of the right and the court and the State consent to the waiver. That is what happened here. Therefore, we reject Rufus Jermaine McDonald III's argument that the court was required at the time of his waiver to tell him that a jury would consist of 12 persons who would have to reach a unanimous verdict and that the burden of proof was on the State to prove him guilty beyond a reasonable doubt. We also hold that the injuries sustained by the victim in this case, who was hit, held at knifepoint, choked several times, and forcibly

1

dragged around a public park, were not trivial. Thus, there is sufficient evidence in the record of bodily harm to affirm McDonald's conviction for aggravated kidnapping.

After taking a walk in a public park in Shawnee, Kansas, with a friend in July 2009, J.P. went to her car, got a book, and continued walking around the park. When she began walking again, she noticed a man bent over as if he was tying his shoe. Shortly after J.P. passed an older woman on the path, she felt someone hit her from behind. When she was hit J.P. dropped the book she was reading. J.P. stated that the man that was tying his shoe was her attacker. During a later police interview, McDonald identified himself as the attacker.

At the beginning of the attack, McDonald wrapped his right arm around J.P.'s neck and told her, "I have a knife. Don't scream." J.P. asked McDonald if she could pick up her book, to which he responded no, and tightened his grip around her neck. McDonald asked if a specific car belonged to J.P. She did not initially answer the question and McDonald tightened his grip further. McDonald asked the question again and J.P. stated the car belonged to her. McDonald asked how much money J.P. had and she responded that he could have her 10 dollars she had with her.

At some point during the attack, J.P. said, "I have asthma. I can't breathe," in an attempt to get McDonald to loosen his grip. J.P. does not have asthma but was having difficulty breathing because of the choking. McDonald physically forced J.P. a short distance from where he originally grabbed her.  When the two reached a different path, McDonald quit walking and began pulling at the back of J.P.'s pants. J.P. struggled with McDonald and he tightened his hold around her neck even more. After this brief struggle, McDonald looked down the back of J.P.'s pants and said, "Let's see what you got." McDonald then made a noise that J.P. perceived as sexual and disgusting. McDonald told J.P. that they were going to stop at this location.

2

At this point, J.P. believed McDonald was going to rape her. J.P. told McDonald people would be able to see him where they stopped, so McDonald began forcing her to a nearby bathroom. While McDonald was taking J.P. toward the bathroom, McDonald still had his arm around her neck and the knife out. J.P. told McDonald, "I am six weeks pregnant. You can't rape me," and McDonald responded, "Oh, shit." When McDonald and J.P. reached the door of the bathroom, J.P. started screaming and flailing. Through this struggle, J.P. freed herself from McDonald's grasp.

Due to the attack, J.P. had scratches and red marks on her neck, shoulders, chin, and upper chest area. J.P. stated that her back and shoulders were sore for a couple days after the attack. J.P.'s neck was sore for 3 days and she had trouble turning her head during this time. At some point during the struggle, McDonald cut himself with his knife and bled on J.P. McDonald did not cut J.P. with the knife; she testified that she did not have any other physical injuries than those just described.

Fortunately, a man driving by the park noticed the struggle going on near the bathroom. When he saw the struggle, he drove into the park to the bathroom area. When the man pulled up, McDonald released J.P. and then ran back toward a parked car. The passer-by let J.P. get into his vehicle and they followed McDonald to the parking lot, took down his license plate number, and called the police.

Later, the police arrested McDonald. After being given *Miranda* warnings, McDonald waived his rights and talked with the police. He told the police that while he was at the park he observed J.P. reading a book. McDonald admitted grabbing J.P. around the neck and pulling out his knife when she struggled with him. McDonald stated that his motive was to get "easy money."

The State charged McDonald with aggravated kidnapping, attempted rape, and attempted aggravated robbery. McDonald waived his right to a jury trial at a pretrial conference. The record reveals that the judge told McDonald he had a right to a jury trial:

> "MR. BILLAM: Judge, I have spoken with my client. What we are going to do is waive our trial to the jury and try this case to the Court on Monday.
>
> "THE COURT: Mr. McDonald, you do have a right to have your case heard and decided by a jury of your peers. If you waive that right, it is going to be heard by a judge. Sounds like it is going to be me on Monday. But at any rate, once you waive your right to a jury. That is not something you can reclaim later. Is that what you want to do here?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: All right. I will accept this waiver as knowing and voluntary. Is that State on board with that?
>
> "MR. COVINGTON: Judge, we accept the waiver.
>
> "THE COURT: All right."

After the waiver, the parties submitted their cases to the judge. After the State rested, McDonald moved for a judgment of acquittal on the aggravated kidnapping and attempted rape charge, arguing there was insufficient evidence of bodily harm. In his view, J.P. only had minor injuries associated with the abduction, which were insufficient to prove bodily harm as required by the law. McDonald also argued that since there was no attempted penetration, there was no evidence of an attempted rape.

The district court denied the motion and convicted McDonald of aggravated kidnapping, attempted aggravated robbery, and sexual battery (for a crime committed the day before with a different victim). Concerning the element of bodily harm, the district court found McDonald had retightened his chokehold several times throughout the incident and J.P.'s injuries were not simply trivial and insignificant injuries that were the result of her abduction.

4

The court sentenced McDonald to a total prison sentence of 187 months.

*McDonald's waiver of his jury trial was proper.*

Felony defendants may waive their right to a jury trial with the consent of the State and the court. K.S.A. 22-3403. The ruling in *State v. Irving*, 216 Kan. 588, 589-90, 533 P.2d 1225 (1975), established the two-step test a reviewing court should use to determine the validity of a waiver of the right to a jury trial. For a waiver to be valid, the defendant must first be advised by the court of his or her right to a jury trial, and then he or she must personally waive the right in writing or in open court for the record. A waiver cannot be presumed from a silent record.

In determining whether a waiver is voluntary, this court must analyze all of the facts and circumstances surrounding the waiver. *State v. Clemons*, 273 Kan. 328, 340, 45 P.3d 384 (2002). Courts must strictly construe a waiver in favor of the defendant being allowed to exercise his or her right to a jury trial. *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016).

Clearly, the second portion of the *Irving* requirement is met here. While McDonald was in open court, he personally answered the court's question of whether he wanted to waive his right to a jury trial. We concentrate our review on what the judge told McDonald. Was it sufficient?

On appeal, McDonald does not challenge whether he personally waived the right. Instead, he challenges whether he *knowingly* waived the right, because the district court did not tell him of all the rights associated with a jury trial.

He points out that the judge did not tell him:
- that the jury would consist of 12 persons;

5

- that it needed to make a unanimous decision;
- that it must be convinced of guilt beyond a reasonable doubt; and
- the burden of proof is on the State.

Additionally, McDonald suggests that because the judge only told him he would "hear" his case and not "decide" his case, his waiver was not knowingly made.

Our research has found no requirement in Kansas law that a defendant must be warned of every right that pertains to a jury trial before voluntarily waiving that right. See *State v. Beaman*, 295 Kan. 853, 862, 286 P.3d 876 (2012). In *Beaman*, our Supreme Court rejected an argument that a waiver was involuntary because the defendant was not advised of the 12-juror requirement. 295 Kan. at 862. In *Beaman*, the court relied on its holding in *Clemons* where it had rejected an argument that failing to advise a defendant that the jury had to unanimously decide the case made a waiver involuntary. *Clemons*, 273 Kan. at 340-41. Thus, our Supreme Court has already expressly rejected two of McDonald's reasons that his waiver was unintelligently given. Turning to his next two points, we are not convinced that they are persuasive.

When we consider McDonald's final two arguments on this point, we are unmoved. The burden is upon the State to show proof of guilt beyond a reasonable doubt and applies to court trials as well as jury trials. That is the burden in any prosecution. If we logically extend the holdings in *Clemons* and *Beaman*, a waiver can be voluntary even when the defendant is not informed that the burden of proof is on the State and the State must prove guilt beyond a reasonable doubt because the defendant is not waiving those rights. Any failure to inform a defendant of these particulars does not make the waiver of a jury trial involuntary. The waived right pertains to the jury—not the burden of proof.

The facts concerning this waiver are nearly identical to the facts found in *State v. Dorantes*, No. 111,224, 2015 WL 4366452 (Kan. App. 2015) (unpublished opinion), *rev.*

*denied* 303 Kan. 1080 (2016). In *Dorantes*, the only statements on the record concerning the waiver of the right to a jury trial were from the judge telling the defendant of his *right* to a jury trial:

> "'MR. CUROTTO: May it please the Court, Mr. Ochoa–Dorantes appears in person and by and through counsel David Curotto. Judge, can we have a trial set, please.
> "'THE COURT: Is this a jury case?
>
> "'MR. CUROTTO: Bench, judge.
>
> "'THE COURT: All right.
>
> . . . .
>
> "'THE COURT: Has there been a waiver of jury on this?
>
> "'MR. CUROTTO: Not on that point, Judge.
>
> "'THE COURT: Mr. Ochoa–Dorantes, *you have a right to have your case heard and decided by a jury of your peers.* If you waive that right, your case will be heard and decided by a District Court judge. If you waive your right to a jury trial on this case, you won't be able to ask for it later if you change your mind. It is a decision for the rest of the case.
>
> "'Mr. Ochoa–Dorantes, do you want to waive your right to trial by jury?
>
> "'THE DEFENDANT: Yes.
>
> "'THE COURT: Thank you. I'll find that waiver as knowing and voluntary." (Emphasis added.) 2015 WL 4366452, at *2.

7

The *Dorantes* panel determined this was sufficient to advise the defendant of his right to a jury trial. 2015 WL 4366452, at *6-7. The panel rejected the defendant's arguments that the waiver was not voluntary because he was not informed of the "'essential components'" of the right to a jury trial—for instance, the 12-juror requirement, unanimity, and the beyond a reasonable doubt standard. 2015 WL 4366452, at *6. We see no reason to rule differently.

McDonald raises the same argument that the defendant in *Dorantes* raised. But there are two differences. McDonald was only told his case would be heard by a judge instead of *heard and decided* by a judge and that McDonald had conversations with his attorney concerning the right to a jury trial waiver.

The fact that McDonald was not told the case would be decided by a judge is of little consequence. If a jury was not deciding the case, then the judge would necessarily have to decide it. Who else was going to decide? A waiver is valid if the defendant knew what the right was that he or she was giving up. Clearly, the district court informed McDonald that he was giving up the right to have a jury decide his case. See *Beaman*, 295 Kan. at 859.

We are mindful that we must look at all the circumstances as they provide the context for assessing a jury trial waiver. *Beaman*, 295 Kan. at 861. The fact that McDonald had discussed the waiver with his counsel prior to waiving the right bolsters our belief that he knew what he was giving up.

McDonald legally waived his right to a jury trial.

*The evidence supports the aggravated kidnapping conviction.*

In his second argument, McDonald questions whether there is sufficient evidence of bodily harm to convict him of aggravated kidnapping. A conviction is supported by sufficient evidence when all the evidence, viewed in a light most favorable to the prosecution, could lead a reasonable factfinder to a determination that the defendant is guilty beyond a reasonable doubt. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

A kidnapping is by law aggravated when the victim suffers bodily harm. K.S.A. 2016 Supp. 21-5408(b). McDonald does not challenge whether there is sufficient evidence to convict for kidnapping but does question whether there is sufficient evidence of bodily harm that elevates the offense to aggravated kidnapping.

The kidnapping statute does not define bodily harm, but in kidnapping cases Kansas courts have applied the definition of bodily harm from *State v. Taylor*, 217 Kan. 706, 714, 538 P.2d 1375 (1975.) In that case a man had kidnapped a young girl and ended up throwing her into a river. The court affirmed Taylor's conviction and adopted a definition of bodily harm that courts still use—"any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner, or projecting of such force against the victim by the kidnapper. [Citation omitted.]" See *State v. Royal*, 234 Kan. 218, 222, 670 P.2d 1337 (1983).

The *Taylor* court relied on a California case, *People v. Tanner*, 3 Cal. 2d 279, 44 P.2d 324 (1935), to formulate this definition of bodily harm. The California court, excluded trivial injuries that are associated with any forcible kidnapping as bodily harm in kidnapping cases. See *Taylor*, 217 Kan. at 714; *People v. Jackson*, 44 Cal. 2d. 511, 517, 282 P.2d 898 (1955). The Kansas court in *Taylor* adopted this concept when it held that "insignificant bruises or impressions resulting from the act itself are not what the legislature had in mind when it made 'bodily harm' the factor which subjects one

9

kidnapper to a more severe penalty than another." The court also recognized the legislature only intended that "unnecessary acts of violence upon the victim, and those occurring after the initial abduction" should constitute bodily harm. 217 Kan. at 714-15. At first congruent, Kansas and California courts have since diverged in their interpretation of the degree of bodily harm necessary to aggravate the crime.

California courts now require substantial bodily harm to elevate kidnapping to aggravated kidnapping. Kansas courts do not. In *People v. Schoenfeld*, 111 Cal. App. 3d 671, 676-79, 168 Cal. Rptr. 762 (1980), some people were taken off a bus, transported under the cover of night to a second location, and held in a van that was concealed underground. Children that were part of the group suffered illness, and one man received minor scratches on his hands from the group's successful escape attempt. The court determined these injuries did not meet the requirements of substantial bodily injury contemplated by the California statute. 111 Cal. App. 3d at 687. McDonald's reliance on *Schoenfeld* is unpersuasive because Kansas law is different.

We refer to the holding in *State v. Mason*, 250 Kan. 393, 827 P.2d 748 (1992). The facts of *Mason* are similar to this case. In *Mason*, an 89-year-old woman was accosted in her home. Her attacker dragged her to a bedroom and pinned her to the floor by her back and ribs. While the woman was restrained, the attacker, for no apparent reason, left. After the attack, the woman had bruises, scratches on her arms, and her ribs were tender. There was testimony that the injuries were consistent with a person defending herself from an attacker. Our Supreme Court held these injuries were sufficient evidence to satisfy the bodily harm requirement of aggravated kidnapping. 250 Kan. at 398. In other words, the injuries were not the type of trivial injuries that are associated with any forcible kidnapping.

J.P. sustained similar injuries as the victim in *Mason*. J.P. testified that she was hit in the back and then placed in a chokehold with a knife to her throat. When she attempted

to escape from McDonald's grip, he tightened his chokehold. Similarly, McDonald tightened his chokehold when J.P. did not immediately answer his question concerning if a car was hers. J.P. had scratches and red marks on her neck, chest, shoulders, and chin and experienced soreness for a few days after the attack. In *Mason*, similar injuries were sufficient to constitute bodily harm under the aggravated kidnapping statute. 250 Kan. at 398. Thus, the injuries J.P. suffered are not the type of trivial bruises or impressions that would result from any forcible kidnapping. See *Taylor*, 217 Kan. at 714-15.

McDonald argues the injuries here were the result of the force necessary to effectuate the kidnapping and are the type of trivial injuries contemplated by the court in *Taylor*. This is an incorrect interpretation of the law. In *Taylor* the court stated, "unnecessary acts of violence, *and* those occurring after the initial abduction" satisfy the requirement of bodily harm. (Emphasis added.) 217 Kan. at 714. Unnecessary acts of violence that occur during the kidnapping can satisfy the bodily harm requirement for aggravated kidnapping. *Crowther v. State*, 45 Kan. App. 2d 559, 572, 249 P.3d 1214 (2011). We must point out that McDonald had a knife at J.P.'s throat, then added a chokehold, which he tightened several times. The knife to J.P.'s throat was sufficient to accomplish the kidnapping. All the rest was unnecessary, cruel force.

In *Crowther*, a panel of this court held that a kidnapping in which a stun gun was used to subdue the victim constituted bodily harm under the statute. 45 Kan. App. 2d at 572. Placing a person in a chokehold that makes it difficult for that person to breathe and tightening the chokehold when the victim attempts to escape is an unnecessary act of violence. See, *e.g.*, *Marcias v. State*, No. 91,493, 2005 WL 1089038, at *3 (Kan. App. 2005) (unpublished opinion), where the panel held that for the purpose of aggravated robbery, "the act of choking the victim must be viewed as an 'act of physical violence' beyond that associated with the act of robbery itself." The fact that McDonald's act of violence occurred during the initial taking and was not the result of additional or

11

superfluous blows, makes no difference in the determination of whether the element of bodily harm was proven. See *Crowther*, 45 Kan. App. 2d at 572.

The evidence in the light most favorable to the prosecution shows that McDonald acted in an intentional, hostile, and aggravated manner. See *Taylor*, 217 Kan. at 714. The injuries to J.P. were not the type of insignificant bruises and impressions associated with any forcible kidnapping. See *Mason*, 250 Kan. at 398. A rational factfinder could find McDonald guilty beyond a reasonable doubt of aggravated kidnapping. The district court did not err.

Affirmed.