No. 55,224

STATE OF KANSAS, *Appellee*, v. SINCLAIR ROYAL, JR., *Appellant.*

(670 P.2d 1337)

Opinion filed October 21, 1983.

*Thomas J. Weilert*, of Turner and Weilert, of Wichita, argued the cause and was on the brief for appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause; and *James D. Hall*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is a criminal case in which the defendant, Sinclair Royal, Jr., appeals from his conviction by a jury in Sedgwick District Court of the crimes of aggravated burglary, K.S.A. 21-3716, aggravated battery, K.S.A. 21-3414, and aggravated kidnapping, K.S.A. 21-3421. The issues raised relate to the late endorsement of a prosecution witness, a denial of defendant's motion for discharge on the aggravated kidnapping charge, the failure of the trial court to give certain requested instructions, and whether the evidence was sufficient to sustain the convictions.

Sometime around 12:30 o'clock a.m., on July 3, 1982, Mrs. Sherry Hartung arrived home at her apartment complex on North Rock Road in east Wichita. As she parked, she noticed an unoccupied silver Camaro parked in the space next to hers. She had not seen it before. When she entered her apartment, she was immediately knocked down some stairs. The stairwell light was on, and she saw a black man standing over her with a knife. She fought her attacker and suffered a cut on her hand, as well as some scratches and bruises. Fortunately, her attacker quickly gave up and ran away. On July 6, 1982, Mrs. Hartung picked the defendant from a lineup, and at trial she positively identified him as her attacker. The Hartung case resulted in the aggravated burglary and the aggravated battery convictions.

Later, about 1:00 o'clock a.m., on July 3, Kathy Harper was in the parking lot of her apartment complex, also on North Rock Road. She was preparing the car for a trip which she planned to take on the following day. A silver Camaro pulled into the lot, and Ms. Harper saw a black man get out of the car. He approached her, asked her about some people he thought lived in her building, and asked if he could use her phone. Suddenly, she found herself grabbed around the neck, with a knife held to her throat. She screamed. The man told her to shut up or he would kill her. He dragged her toward the Camaro. Ms. Harper fell down and was knocked out briefly. Her glasses were broken. As

the man pushed her into the Camaro from the driver's side, she regained consciousness. She resisted, he gave up, and she broke away. She was able to get the first three letters from the Camaro license tag, which she noted was an out-of-state license. Ms. Harper suffered a small knife gouge to her collarbone and a small cut on her hand, both from the knife the assailant was carrying. In addition, she was knocked out and she had a badly bruised and scraped knee.

On July 6, 1982, Ms. Harper viewed the same lineup Mrs. Hartung had seen, but she did not pick the defendant; instead, she picked one James Campbell. At trial, she said in substance that she believed that the defendant was the man who attacked her. The Harper case resulted in the aggravated kidnapping conviction.

Sinclair Royal was arrested at 1:26 o'clock a.m., on July 3, on the Kansas Turnpike south of Wichita. He was driving a silver Camaro; the first three letters of the out-of-state license tag were those noted by Ms. Harper.

At trial, the defendant relied upon a defense of alibi. He testified in substance that he met a friend, Wardell Ligon, at a Denny's Restaurant in east Wichita around 12:30 o'clock a.m.; that Ligon borrowed defendant's Camaro and was gone for twenty to twenty-five minutes; and that Ligon returned the car immediately before Royal started on his way to Oklahoma. Mr. Ligon, called by the State in rebuttal, completely contradicted the defendant's alibi. He denied being in Denny's with defendant, and denied borrowing the car. Also, on rebuttal, the State called Mrs. Hartung, who testified positively that Wardell Ligon (who was still in the courtroom) was not the person who attacked her.

We turn now to the first issue, the late endorsement of a witness for the State. Mrs. Hartung testified that the stairwell light was on during the attack; one of the investigating police officers indicated that the light was not turned on. The State then sought to endorse Mark Hartung, husband of the victim. Over defendant's objection, the trial court permitted the endorsement, and the State called Mr. Hartung as a witness. He testified that he specifically recalled turning on the stairwell light, in keeping with his usual practice, before he went out that night. He had left the apartment sometime before the occurrence.

The late endorsement of witnesses is discretionary with the trial court. In *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, 526, 618 P.2d 1186 (1980), Justice Fromme explained:

"This statute makes late endorsement of witnesses discretionary with the trial court. It may in the interest of truth and justice permit late endorsement of the names of witnesses provided the opposing party or parties are given time to interview said witnesses and provide for cross-checking their testimony. *State v. Costa,* 228 Kan. 308, Syl. ¶¶ 4, 5, 613 P.2d 1359 (1980). The test to be used in determining whether permission should be granted is whether the defendant's rights will be prejudiced. *State v. Rueckert,* 221 Kan. 727, 730, 561 P.2d 850 (1977)."

The purpose of the endorsement requirement included within K.S.A. 22-3201(6) is to prevent surprise to the defendant, and to give him an opportunity to interview and examine the witnesses for the prosecution in advance of trial, should he desire to do so. *State v. Bryant,* 227 Kan. 385, 387, 607 P.2d 66 (1980). Here, Mrs. Hartung testified, both at the preliminary examination and upon trial, that the stairwell light was on at the time of the attack. Defense counsel was allowed to interview Mr. Hartung before he testified. There was no surprise; the testimony of the witness did not change the State's theory of the case; and the rights of the defendant were not prejudiced. We find no error.

We now turn to the defendant's claimed instructional errors. He was charged with and convicted of the aggravated kidnapping of Kathy Harper. He contends that the trial court erred in failing to instruct on kidnapping as a lesser included offense, as requested by the defendant. Kidnapping becomes aggravated only when bodily harm is inflicted on the person kidnapped. K.S.A. 21-3421.

K.S.A. 21-3107(3), since amended, imposes a duty upon the trial court to instruct the jury as to all lesser crimes of which the accused might be found guilty under the charges contained in the information and upon the evidence adduced. This duty, we have frequently noted, arises only when there is evidence upon which a defendant might reasonably be convicted of the lesser charge. See *State v. Chears,* 231 Kan. 161, 165, 643 P.2d 154 (1982), and cases there cited. Further, when considering the refusal of a trial court to give instructions requested by the defendant, an appellate court must consider the evidence supporting those instructions in the light most favorable to the

defendant. *State v. Myers,* 233 Kan. 611, 616, 664 P.2d 834 (1983); *State v. Farmer,* 212 Kan. 163, 510 P.2d 180 (1973).

The defendant testified but offered evidence only of an alibi; thus, we have no defense version of the offense but only that offered by the State. The State offered evidence that Ms. Harper sustained injuries. Reduced to one basic issue, the question is whether her injuries constituted "bodily harm" as a matter of law. We discussed bodily harm in *State v. Taylor,* 217 Kan. 706, 713-15, 538 P.2d 1375 (1975), and we later quoted that discussion at length with approval in *State v. Sanders,* 225 Kan. 156, 158-59, 587 P.2d 906 (1978). Bodily harm has been defined as any touching of the victim against the victim's will, with physical force, in an intentional, hostile and aggravated manner, or the projecting of such force against the victim by the kidnapper. *State v. Taylor,* 217 Kan. at 714. This definition was developed from a California case and, as we noted in *Taylor,* the California court has significantly narrowed the definition of "bodily harm" and now recognizes that some "trivial" injuries, likely to result from any forcible kidnapping by the very nature of the act, do not constitute "bodily harm" as that term is used in the aggravated kidnapping statute. Only unnecessary acts of violence upon the victim and those occurring after the initial abduction constitute "bodily harm." See *Taylor* at page 714 and *People v. Schoenfeld,* 111 Cal. App. 3d 671, 168 Cal. Rptr. 762 (1980). In the latter case, the California court held as a matter of law that minor cuts sustained by one of the victims during a successful escape effort, a scraped knee of one of the victims sustained while climbing down a ladder, and nosebleeds, fainting and stomach distress sustained by other victims did not constitute bodily harm.

In the case before us, however, we consider it significant that the gouge to the victim's collarbone and the cut to her hand were inflicted by the knife used by the defendant in perpetrating the offense. While these wounds were not life-threatening, we do not regard them as "trivial" or as likely to result from any forcible kidnapping. Where a knife or firearm is used in the perpetration of a kidnapping, and the victim is wounded by that instrument while the kidnapper is using it to accomplish the crime by force, we hold that the resulting injury constitutes bodily harm as a matter of law. None of the "injuries" sustained in *Schoenfeld* were inflicted by knife, gun or other weapon, and that case is thus distinguishable. We conclude that bodily harm was inflicted

upon the person of Ms. Harper and that the trial court did not err in refusing to instruct on kidnapping. Under the evidence, defendant was either guilty of aggravated kidnapping or not guilty.

Defendant contends that the trial court erred in failing to define "bodily harm." The term is readily understandable and no instructional definition is ordinarily necessary. *State v. Sanders,* 223 Kan. 550, 575 P.2d 533 (1978). Furthermore, we have determined that "bodily harm" was present in this case as a matter of law. There was no dispute but that the victim sustained the injuries noted above, and that the cuts were inflicted by the knife wielded by the assailant. Of course, if there is a fact issue as to whether bodily harm is sustained by a victim, the matter may be submitted to the jury under proper instructions. See "Notes on Use," PIK Crim. 2d 56.25.

Defendant contends that the trial court erred in failing to instruct on attempted kidnapping or attempted aggravated kidnapping. "Attempt" is defined by K.S.A. 21-3301(1) as follows:

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime."

In *State v. Buggs,* 219 Kan. 203, 216, 547 P.2d 720 (1976), we said:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

Further, we gave examples indicating that the removal of a rape victim from a public place to a place of seclusion is sufficient to constitute kidnapping.

Here, the taking or confinement is alleged to have been done to facilitate the commission of the crime of aggravated battery or rape. Ms. Harper was dragged a distance of some forty feet from her car across the parking lot to the defendant's vehicle. She explained that she fell down and evidently was knocked out; when she regained consciousness, the door on the driver's side of the defendant's car had been opened, and "he had me past the

open door and was pushing me into the car, into the driver's side of the car." The defendant had the victim entirely under his control. He removed her from a well-lighted public place into the interior of his vehicle. That she kept fighting and screaming, and eventually was able to break away, does not lessen the offense.

In *State v. Mahlandt*, 231 Kan. 665, 671, 647 P.2d 1307 (1982), the facts were somewhat similar. The victim was taken from a store to a waiting automobile. In discussing the trial court's refusal to give an instruction on an attempted kidnapping, Chief Justice Schroeder, writing the unanimous opinion for this court, said:

"Here the evidence was sufficient to establish an actual taking of the victim. Either the defendant was guilty of kidnapping under the statute or he was not guilty, depending on the jury's belief of the evidence. There was no evidence of an attempt to kidnap.

"The uncontroverted evidence here shows that the victim was forced from the store despite her attempt to fight and get away, and was physically placed by the defendant in his car. It was only after the defendant went around to the other side of his car to get in, and started up the car to drive away that the victim was able to escape. Once the defendant secured the victim in his car it is clear that she was under his control and a taking had occurred.

"On the evidence in this case the trial court properly refused to give an instruction on attempted kidnapping and all other lesser offenses requested by the defendant." 231 Kan. at 671.

The evidence in this case upon which we must determine whether there was an attempt or a completed crime was that of the victim alone. Defendant's alibi testimony does not bear on the necessity for the giving of a lesser included offense instruction. See *State v. Hutton*, 232 Kan. 545, 554-55, 657 P.2d 567 (1983). Upon the evidence before us, we conclude that the offense was completed when the victim was forced into the defendant's automobile; therefore, the trial court did not err in refusing to give an attempt instruction.

Finally, defendant complains that the trial court erred in failing to give his requested instruction defining the term "facilitate." We note that the trial judge gave the jury a definition of the term, based upon language used in our opinion in *State v. Buggs*. Error cannot be predicated upon the refusal to give a specific instruction where the instructions given include the substance of those refused. *State v. Harwick*, 220 Kan. 572, 577, 552 P.2d 987 (1976).

Defendant next argues that the evidence was not sufficient to sustain his conviction of the offenses charged. The first part of his argument on this point is his contention that the State failed to establish "bodily harm." What we have previously said in this opinion disposes of that contention. He also claims that the record contains no evidence of attempt to rape or to commit aggravated battery, the crimes the kidnapping was alleged to have been intended to facilitate. The evidence tending to establish the intent to rape or batter the victim was simply that she was being dragged, at knifepoint and against her will, into the car of a stranger in the middle of the night. The jury was left to determine the defendant's intentions, using common sense. "Intent is a state of mind existing at the time a person commits an offense and it may be shown by acts, circumstances and inferences deducible therefrom." *State v. Evans*, 219 Kan. 515, 519-20, 548 P.2d 772 (1976); *State v. Mans*, 213 Kan. 36, Syl. ¶ 2, 515 P.2d 810 (1973). The jury reasonably could have inferred that the defendant's intent was to rape or otherwise molest the victim; that is obviously the most plausible explanation for his behavior.

As to the Harper case, the defendant, his car, and three letters of his out-of-state license tag were described by the victim. Ms. Harper described an attack similar to the Hartung attack, perpetrated by a similar assailant, who asked questions similar to those asked of Mrs. Hartung. The attacks occurred nearby on the same night within a few minutes of each other. While Ms. Harper did pick the wrong man from the lineup, she stated in court that she believed Royal was the man. She was dragged across the parking lot, stuffed into a car, and she sustained knife wounds.

As to the aggravated burglary and aggravated battery of Mrs. Hartung, the defendant's car was identified and the defendant himself was positively identified by the victim at a lineup and in court. Mrs. Hartung had been attacked in a lighted area in her apartment; she was injured by a deadly weapon used in the attack.

Where a defendant contends that the evidence is insufficient to sustain the conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt? *State v. Voiles*, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121

(1979). Applying this standard, we hold that the evidence was sufficient to sustain the convictions.

Finally, defendant contends that the trial court erred in denying his motion for discharge on the charge of aggravated kidnapping made at the close of the prosecution's case and again at the close of all of the evidence.

In *State v. Mack,* 228 Kan. 83, 89, 612 P.2d 158 (1980), we said:

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt."

Defendant's argument on this issue is simply a reargument of matters already discussed. What we have already said is determinative of this issue. The trial court did not err in denying the motion for discharge. The judgment is affirmed.