NOT DESIGNATED FOR PUBLICATION

No. 125,463

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS D. SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Not submitted for oral argument. Opinion filed May 24, 2024. Affirmed in part, vacated in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, and *Travis D. Smith*, appellant pro se.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM:  A jury sitting in Sedgwick County District Court convicted Defendant Travis D. Smith of aggravated kidnapping, criminal threat, and two counts of domestic battery. On appeal, the lawyer representing Smith contends the district court erred in denying the defense's request for a mistrial when an insufficiently redacted video statement Smith gave police was played for the jurors and they heard him refer to his previous felony convictions. The lawyer also submits the district court improperly admitted computer enhanced images of the victim's injuries. Smith filed his own

1

supplemental brief disputing the evidence of bodily harm supporting the aggravated kidnapping conviction. We find no reversible error in those points and, therefore, affirm Smith's convictions and the resulting sentences.

The appellate lawyer further argues that the district court failed to adequately consider Smith's financial circumstances in ordering that he reimburse a portion of the attorney fees for his court-appointed trial counsel. We agree with Smith's lawyer, so we vacate that order and remand to the district court with directions to determine an appropriate reimbursement.

FACTUAL AND PROCEDURAL HISTORY

K.K. had known Smith for about 10 years in October 2020, when the incident giving rise to this case took place, and she considered him a friend. The two were romantic partners off and on during that time. They appeared to be in the waning phase of one of their romantic attachments. K.K. had suddenly moved out and was staying elsewhere. Smith believed K.K. had taken some firearms of his, so he went to the neighborhood where he believed she was staying. Smith confronted her outside a house there and began yelling about his guns. A neighbor called 911 and provided a real-time account of Smith throwing K.K. to the pavement by her hair, picking her up and slamming her head onto the hood of a car, forcing her inside the car, and then driving off.

Smith drove K.K. to the home of Smith's parents in Mulvane, where the two had occasionally lived. On the way, Smith repeatedly reached over and punched K.K. as she curled up protectively in the front passenger seat. She assured him she had not taken his guns. Mulvane police officers intercepted the car. Wichita police took Smith into custody, and K.K. was transported to an area hospital.

2

K.K., who apparently actively abused methamphetamine, proved to be an ambivalent and equivocal witness at best. In the course of two interviews, she told a Wichita police detective Smith had choked her before driving away and punched her while they were in his car on the way to Mulvane. But K.K. attributed the bruising around her eyes and elsewhere to an earlier encounter with someone else. At trial, the neighbor testified to the initial confrontation between Smith and K.K. Although K.K. testified, she disclaimed any detailed recollection of her interaction with Smith that day and told the jurors she had watched her police interview to refresh her memory. K.K. recounted some of the physical abuse and told the jurors she feared Smith would kill her.

Shortly after he was taken into custody, Smith gave a recorded interview to the Wichita police detective. During the questioning, he acknowledged wanting to get his guns back. And pertinent to one of the points on appeal, Smith told the detective, "Now, of course, I'm a felon, so I'm not supposed to have a gun." Later in the interview, he said, "I'm not a dangerous criminal. I'm not—I have some charges, but I'm not a—no violent crimes, no crimes against another person. None of that." And toward the end of the interview, Smith referred to K.K.'s checkered background, stating, "She's a felon too."

As we understand the record, the State intended to present a redacted version of the interview during the trial—omitting Smith's comments about his criminal history—and so informed Smith's lawyer. But what was actually played for the jurors included those comments, prompting Smith to move for a mistrial. The district court denied the request.

During trial, the State offered both regular photographs and computer "enhanced" images of K.K.'s injuries taken when she was examined at the hospital. The nurse who documented the injuries testified at trial. Over Smith's objection, the district court admitted the computer enhanced images as evidence. The ruling has become another

3

point on appeal. Smith neither testified in his own defense nor offered other evidence for the jurors' consideration.

The State charged Smith with aggravated kidnapping, criminal threat, one count of aggravated domestic battery, and one count of domestic battery. The jury convicted Smith of the charged crimes, except for the aggravated domestic battery; they found him guilty of the lesser included offense of domestic battery. At a later hearing, the district court sentenced Smith to serve a controlling 278-month prison term with postrelease supervision for 36 months. The district court ordered Smith to reimburse the Board of Indigents' Defense Services (BIDS) a reduced amount for the attorney fees paid to his appointed trial lawyer. Smith has appealed.

LEGAL ANALYSIS

*Motion for Mistrial*

For his initial point on appeal, Smith challenges the denial of his motion for a mistrial based on the unredacted police interview played for the jurors. By statute, a criminal defendant may move for a mistrial when "[p]rejudicial conduct . . . makes it impossible to proceed with the trial without injustice." K.S.A. 22-3423(1)(c). A district court employs a two-step analytical tool in considering a motion for a mistrial. First, the district court must determine whether there has been "some fundamental failure" in the judicial process. *State v. Sherman*, 305 Kan. 88, 118, 378 P.3d 1060 (2016). If so, the district court should consider whether corrective steps may mitigate the harm and whether the residual prejudice creates an injustice to the defendant requiring abandonment of the trial. 305 Kan. at 118-19. What amounts to a fundamental failure isn't especially well-defined and seems to require an occurrence that, considering the totality of the circumstances, injects into the trial some degree of demonstrable prejudice to the defendant. See *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012).

4

We review the ultimate ruling for an abuse of judicial discretion. 305 Kan. at 118. A district court impermissibly exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). As the party asserting an abuse of discretion, Smith bears the burden of proving the district court erred. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

As we indicated, the prosecutor and Smith's lawyer agreed that an edited version of the police interview would be shown to the jurors, excising the statements Smith made alluding to his status as a convicted felon. After the unedited interview was played, the prosecutor clearly outlined the agreement to the district court and disclaimed any intention of introducing the statements under K.S.A. 60-455 as other crimes evidence. The district court denied Smith's motion for a mistrial but offered to immediately give the jurors a limiting instruction. Smith's lawyer declined the offer and suggested the instruction would likely serve to highlight the comments rather than mitigate them.

Smith's statements should not have been presented to the jury, especially given the agreement between the parties. Even if we assume their presentation was a fundamental failure, we do not see that the process had become irredeemably unfair to Smith as a result. Strong evidence—most notably, the neighbor's eyewitness account—supported the aggravated kidnapping charge. The neighbor described Smith inflicting physical abuse on K.K. in excess of what would have been sufficient to get her into the car, thereby effectuating the kidnapping. The jurors could reasonably conclude that conduct caused bodily harm to K.K., a required element of aggravated kidnapping.

Smith's lawyer quickly rejected the district court's offer of some form limiting instruction without discussing any possible wording. We understand the general tactical

concern. See *State v. Felder*, No. 112,040, 2016 WL 463736, at *7 (Kan. App. 2016) (unpublished opinion) ("[A]s a tactical consideration," a limiting instruction may "only call attention to something that otherwise would be of little significance."). Conversely, however, we necessarily indulge an assumption that the jurors would have successfully endeavored to abide by an instruction to disregard improperly admitted evidence. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017); *State v. Midgyett*, No. 121,868, 2021 WL 4127697, at *4 (Kan. App. 2021) (unpublished opinion). The tactical call to forgo any limiting instruction necessarily blunts the argument for a mistrial.

In the statements that were to be redacted, Smith explained that his record did not include violent felonies, and he suggested he was not a violent person. In some respects, those remarks may have been at least marginally beneficial to him. That, too, cuts against a mistrial. Those considerations collectively support the district court's ultimate decision to deny the motion for a mistrial and place the decision well within the range of judicial discretion.

*Admission of Computer Enhanced Images*

Smith next challenges the district court's decision to admit the computer enhanced images of injuries principally around K.K.'s eyes and on her neck. As we indicated, the State offered the images through a nurse at the hospital where K.K. was examined and treated. At trial, the nurse explained she had been trained in how to operate the proprietary computer program and the related hardware and used the equipment to capture both traditional photographs and enhanced images of K.K. The computer program uses what were described as negative inverse filters to produce the enhanced images. But the nurse acknowledged she had no understanding of the computer technology or how the filters worked.

6

According to the nurse, the enhanced images may depict subcutaneous bruising or tissue damage in addition to surface injuries or they may show surface bruising not readily visible because of skin tone, birthmarks, or other conditions. The computer enhanced images of the area around K.K.'s eyes are striking in comparison to the regular photographs. The images showing what the nurse described as bruising or petechiae on K.K.'s neck are less so. The nurse agreed the computer enhanced images of K.K. are not what one would have seen with the naked eye.

During the trial, Smith objected to the computer enhanced images based on a lack of foundation. The district court denied the objection and admitted both the regular photographs and the computer enhanced images of K.K. We presume the objection itself was sufficiently descriptive to preserve the point for our review.

A photograph typically may be admitted as evidence if someone—often, but not necessarily, the photographer—establishes the image fairly and accurately depicts what an observer would have seen from the same vantage point. *Landrum v. Taylor*, 217 Kan. 113, 120, 535 P.2d 406 (1975) (foundation to admit photograph "contemplates proof that it accurately represents the person, place or thing photographed"); *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009); 29A Am. Jur. 2d, Evidence § 961; 23A C.J.S., Criminal Procedure and Rights of the Accused § 1463. What's shown in the photograph also must be relevant to a disputed issue. The parties have not directed us to relevant authority outlining a different foundation for computer enhanced photographic images. In the absence of that direction, we consider the images to be photographs or their evidentiary equivalent.

Here, the nurse was the only witness attempting to lay a foundation for the admission of the computer enhanced images of K.K. She agreed those images differed materially from what someone looking at K.K. would have observed. And she lacked the education or training to explain how or why those images accurately depicted bruising

7

and other injuries to K.K. that were not otherwise readily visible. We, therefore, assume without deciding that the State failed to establish a sufficient evidentiary basis to admit the computer enhanced images as exhibits in Smith's trial.

But the improper admission of evidence is subject to review for harmless error. In reviewing an evidentiary mistake, we ask whether there is "a reasonable probability" the error affected the outcome of the trial considering the entire record. As the party benefitting from the inadmissible evidence, the State bears the burden of showing harmlessness. *State v. Lowery*, 308 Kan. 1183, 1235-36, 427 P.3d 865 (2018). We conclude the State has done so.

The State had to show Smith inflicted bodily harm on K.K. to support the convictions for aggravated kidnapping and domestic battery. There was substantial evidence of bodily harm apart from the computer enhanced images. First, the jurors also reviewed the normal photographs of K.K. that depicted her visible injuries. Second, other evidence supported the infliction of bodily harm. The neighbor described Smith grabbing K.K. by the hair and hurling her to the ground and then picking her up and smashing her face into the hood of his car. K.K. said Smith repeatedly punched her as he drove from Wichita to Mulvane. All of that testimony supports the jury's conclusion Smith caused bodily harm to K.K., and it does so independently of the computer enhanced images. We see no basis for granting relief on this point.

*Proof of and Instruction on Bodily Harm*

Smith filed his own brief to supplement the one his appointed appellate lawyer submitted and raises two related arguments bearing on bodily harm. To start, Smith contends the State presented insufficient evidence of bodily harm to prove the aggravated kidnapping charge. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing in the district court, here the State, and in

8

support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Simple kidnapping requires that the perpetrator "tak[e] or confin[e]" the victim "by force [or] threat" for the purpose of injuring or terrorizing the victim. K.S.A. 21-5408(a)(3). Kidnapping is a severity level 3 person felony. By statutory definition, kidnapping may entail some application of force to seize and then confine the victim. And some incidental bodily harm associated with that use of force will not elevate a simple kidnapping to aggravated kidnapping. *State v. Royal*, 234 Kan. 218, Syl. ¶ 7, 670 P.2d 1337 (1983) (minor injuries "likely to result from any forcible kidnapping by the very nature of the act, do not constitute 'bodily harm' as that term is used in the aggravated kidnapping statute"). The crime, nonetheless, becomes aggravated kidnapping, a severity level 1 person felony, "when bodily harm is inflicted upon" the victim. K.S.A. 21-5408(b). The criminal code contains no definition of "bodily harm," and the Kansas appellate courts have fashioned neither a comprehensive meaning for the term as used in K.S.A. 21-5408(b) nor a predictive test for what degree of injury to the victim elevates kidnapping to aggravated kidnapping. Various cases offer less than fully illuminating descriptions. *Royal*, 234 Kan. at 222 ("[o]nly unnecessary acts of violence upon the victim and those occurring after the initial abduction"); *State v. Taylor*, 217 Kan. 706, 714, 538 P.2d 1375 (1975) ("'any touching of a victim . . . with physical force in an intentional, hostile and aggravated manner'" and, thus, "unnecessary acts of violence"); *Crowther v. State*, 45 Kan. App. 2d 559, 572, 249 P.3d 1214 (2011) (recognizing "unnecessary acts of violence" language drawn from *Taylor* as distinguishing aggravated kidnapping from simple kidnapping).

9

While the dividing line between the degree of force or violence necessary to effect a kidnapping and some measure of "unnecessary violence" elevating the crime to aggravated kidnapping may not be well-defined in Kansas law, this is not a case falling close to that line, especially on a challenge to the sufficiency of the evidence. We may safely conclude that the infliction of gratuitous violence is enough to cross the line to aggravated kidnapping. Smith's actions, as described by the neighbor, fit that mold. They displayed marked physical abuse of K.K., and they appeared unnecessary to getting her into the car as the act underlying the kidnapping. In short, there was sufficient evidence to support the jury's guilty verdict on aggravated kidnapping.

In his supplemental brief, Smith also contends the district court should have provided the jurors with a definition of "bodily harm" for their use in weighing the evidence on the aggravating kidnapping charge. During the trial, Smith did not request a definitional instruction. In his brief, he neither offers an example of what he considers an appropriate instruction nor cites any caselaw identifying such an instruction. We review claimed instructional errors through a set of sequential considerations. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018) (preservation, legal appropriateness, factual appropriateness, and prejudicial error). Because Smith failed to preserve the issue in the district court with the offer of an instruction and an objection to the district court's instructions, we review the omission for clear error.

For purposes of this appeal, we assume a properly crafted instruction defining bodily harm would be both legally and factually appropriate. We move to the last step addressing prejudice and assess the lack of an instruction under the clear error standard. To grant relief, we would have to be firmly convinced the jury would have reached a different verdict had an appropriate instruction been given. *Williams*, 308 Kan. at 1451. Our discussion thus far also disposes of this issue adversely to Smith. The undisputed testimony from the neighbor, as a disinterested witness, amply established the sort of gratuitous and excessive violence supporting the aggravated kidnapping charge. A

properly crafted instruction would have done no more than reinforce the jurors' collective assessment of Smith's conduct. We, therefore, have no reason to suspect the verdict would have been different and certainly hold no firm conviction it would have been.

*BIDS Reimbursement*

As a final point, Smith's appellate lawyer submits the district court failed to inquire sufficiently into Smith's financial obligations and earning capacity in setting the amount he should be required to reimburse BIDS for his appointed trial counsel. The district court reduced the reimbursement from about $8,600 to $2,000; but it did so in a cursory manner. The district court simply suggested Smith was able-bodied and, therefore, could work in prison and upon his release.

The district court did not, however, inquire into what job skills and experience Smith had or otherwise consider factors bearing on his earning capacity. Nor did it elicit any information about his current or anticipated assets and liabilities. The Kansas Supreme Court has mandated such an inquiry. *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006); see *State v. Owens*, No. 125,919, 2024 WL 1005577, at *2-3 (Kan. App. 2024) (unpublished opinion) (recognizing continuing efficacy of *Robinson* and remanding for further consideration of BIDS reimbursement). Although the district court substantially reduced Smith's reimbursement, it failed to make the required financial assessment—an undertaking that might have yielded a greater reduction. We, therefore, vacate the BIDS reimbursement order and remand for a new hearing or other appropriate proceedings on that issue.

Affirmed in part, vacated in part, and remanded with directions.